

25 Cannon Street
London EC4M 5UB
UK
+44 20 7184 7000  Main
+44 20 7184 7001  Fax
www.dechert.com

**ROGER BURLINGAME**
*Partner*

Roger.Burlingame@dechert.com
+44 20 7184 7333  Direct
+44 20 7184 7001  Fax

May 12, 2025

**BY ECF**

The Honorable Richard M. Berman
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 17B
New York, NY 10007

**Re:** *United States v. Keonne Rodriguez and William Hill*, No. 24 Cr. 82 (**RMB**)

Dear Judge Berman,

On behalf of Defendants William Hill and Keonne Rodriguez, we respectfully submit this
reply in support of our request for a hearing concerning the Government's April 1, 2025,
disclosure of an August 23, 2023, call between prosecutors and the U.S. Treasury
Department's Financial Crimes Enforcement Network ("FinCEN").

The information the Government suppressed for almost a year is classic *Brady*:  During its
investigation of Samourai Wallet, prosecutors called FinCEN to determine whether it
would qualify as a "money services business" that was required to have a license and to
implement anti-money laundering controls.  Two FinCEN employees, including the Chief
of FinCEN's Virtual Assets and Emerging Technology Section in the Enforcement and
Compliance Division, responded that, under FinCEN's guidance, the answer was "no"
because Samourai did not take custody of a user's cryptocurrency.  Because this response
precisely echoes the public statements Samourai Wallet made about why its business did
not run afoul of the licensing and money laundering requirements for money transmitters,
FinCEN's statements provide powerful corroboration of Mr. Hill and Mr. Rodriguez's
good faith belief that they were not violating any laws.

Notwithstanding the negative response it received from FinCEN—the actual regulator
responsible for enforcing the anti-money laundering rules that financial services providers
must follow—prosecutors brought charges for operating an unlicensed money transmitting
business anyway.  Over the next year, prosecutors produced many terabytes of discovery,
carefully avoiding disclosure of what they had to know would be a bombshell—proof of



The Honorable Richard M. Berman
May 12, 2025
Page 2

the very "regulation by prosecution" that two U.S. Senators protested at the time of the charges, that the cryptocurrency industry has decried in letters to Congress and the President, and that is now the subject of the Blanche Memo.

The Court's individual practices make clear that evidence favorable to the defense that is known at the time of the indictment must be disclosed to the defense within two weeks, whether the Defendants have asked for it or not. Two separate Court orders under Rule 5(f) also reiterated the need to disclose *Brady* information as soon as it is discovered. Where the Government fails to do so, it may be subject to a range of possible sanctions. Yet the Government's seven-page response letter (ECF No. 88) fails to provide any explanation whatsoever for the year-long delay in disclosing its August 23, 2023, call with FinCEN, a period in which the Defendants endured significant restrictions on their liberty and spent a substantial portion of their savings to defend themselves. The Government's silence on this point alone warrants a hearing, and nothing in its response suggests otherwise.

First, the Government argues that its "informal" call with FinCEN does not fall within the "strict requirements" of *Brady* because FinCEN's representatives were merely expressing an "individual opinion." ECF No. 88 at 5. It then argues that the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), overturning the *Chevron* doctrine, means that FinCEN's interpretation of the law lacks any "authoritative effect." ECF No. 88 at 5-6. This is sophistry. The reason why the August 23, 2023, call is favorable to the defense has nothing to do with whether the FinCEN employees were right or wrong about the law. Rather, it is the fact that they expressed the identical interpretation of the FinCEN guidance as the Defendants did in their public statements while they were supposedly knowingly engaged in a criminal conspiracy. That FinCEN employees—including the one responsible for enforcing FinCEN rules against companies like Samourai Wallet—had the same "opinion" as Mr. Hill and Mr. Rodriguez is evidence that they reasonably believed that they did not require a FinCEN license or anti-money laundering controls.

Moreover, by citing to a Supreme Court case about the level of deference owed to an agency's interpretation of "an ambiguous statute," *id.* at 6, the Government unintentionally reveals the ugly truth that has made this prosecution so controversial from the start. The Government may not criminally prosecute Mr. Hill and Mr. Rodriguez for violations of "an ambiguous statute." *See Skilling v. United States*, 561 U.S. 358, 410 (2010) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.") (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)); *United States v. Krivoi*, 80 F.4th 142, 153 (2d Cir. 2023) ("Furthermore, '[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them'") (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion)). For this reason, the Government's continued failure to dismiss this prosecution under the



The Honorable Richard M. Berman
May 12, 2025
Page 3

Blanche Memo only delays what should be inevitable—the dismissal of the charges as a matter of law.

Second, the Government argues that it disclosed its call with FinCEN in time for the Defendants to use it.  ECF No. 88 at 6.  While it is true that the *Brady* rule requires disclosure of favorable evidence in time for the defense to make use of it at trial, repeated violations of the *Brady* rule have prompted courts, including this Court, to require disclosure as soon as a prosecutor becomes aware of such evidence.  By suppressing its call with FinCEN until the Defendants specifically asked for any communications with FinCEN—a nearly year-long period during which there is no reason to believe the prosecution would not have accepted a guilty plea—notwithstanding this Court's individual rules and the two Rule 5(f) orders, the Government completely ignored these rules.

As a result of the Government's silence as to the circumstances of its failure to disclose its August 23, 2023, call with FinCEN until April 1, 2025, we still do not know such basic information as whether it was inadvertent or deliberate.  The late disclosure also prompts questions about whether the Government presented evidence of FinCEN's interpretation of the relevant regulations to the grand jury as required by the Justice Manual.  *See* Justice Manual § 9-11.233 ("It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person.").  Or whether the line prosecutors consulted with their supervisors about whether and when to disclose the FinCEN call.

When confronted with belated disclosures of *Brady* information, courts in this district have not hesitated to require prosecutors to explain their actions, including by disclosing internal correspondence about whether and when to disclose the information.  *See, e.g.*, *United States v. Jain*, No. 19-CR-59 (PKC); *United States v. Ahuja*, No. 18-CR-328 (KPF); *United States v. Nejad*, 18-CR-224 (AJN); *United States v. Pizarro*, No. 17-CR-151 (AJN).  Because the Government has refused to disclose this information to the defense, the Court should compel it to do so, and then hold a hearing to determine the circumstances of the Government's late disclosure of *Brady* information and the proper remedy.



The Honorable Richard M. Berman
May 12, 2025
Page 4

Respectfully submitted,

*/s/ Roger A. Burlingame*                    */s/ Michael Kim Krouse*
Roger A. Burlingame                          Michael Kim Krouse


Attachment

cc:   All other counsel of record (by ECF)