# Dechert
LLP

**MEMO ENDORSED**

**ROGER BURLINGAME**, Dechert
*Partner*

+44 20 7184 7333  Direct
+1 212 641 5682  Direct
Roger.Burlingame@dechert.com

**MICHAEL KIM KROUSE**, Arnold & Porter
*Partner*

+1 212.836.7750  Direct
Michael.Krouse@arnoldporter.com

> Amicus presentations are often of value but are not needed at this time. Perhaps amici can be helpful at oral argument of motion to dismiss. Most valuable at this time would be counsel's streamlined status of current regulatory framework, and the theory of less is often more.
>
> SO ORDERED:
> Date: 6/3/25
> Richard M. Berman
> Richard M. Berman, U.S.D.J.

May 29, 2025

BY ECF

Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *United States v. Keonne Rodriguez and William Lonergan Hill*, 24 Cr. 82 —
Amicus Briefs In Support of Motion to Dismiss Indictment

Dear Judge Berman:

    This letter responds to the Court's April 1, 2025 order directing defendants to "send a letter indicating need for [amicus] briefs and identifying proposed amicus." As explained below, this is precisely the type of case where amici curiae could provide helpful information and context to the Court.

    Defendants' joint motion to dismiss filed today involves issues of broad importance not only to defendants, but to the cryptocurrency industry generally. The Government's novel legal and policy shift reflected in the indictment seeks for the first time to criminalize commercial activity long considered lawful. And the Government has made this about-face without fair notice, and in the context of evolving technology and legal environments. The Indictment has thus generated widespread concerns from industry participants, technology experts, media commentators, and even members of Congress.

    A coalition of more than thirty stakeholders—including the George Mason Antonin Scalia Law School, the DeFi Education Fund, and numerous industry participants—recently raised concerns about this prosecution to the Senate Committee on Banking, Senate Committee on the Judiciary, House Committee on Financial Services, and House Committee on the Judiciary, reflecting the widespread interest in, and broad implications of, this Court's ruling on the legal questions at issue in this case.[1] And these issues have

---

[1] Letter to Senate Committee on Banking et al. from Industry Participants, Mar. 26, 2025 (attached).

# Arnold & Porter

May 29, 2025
Page 2

taken on even greater prominence since the President issued Executive Order 14718 (Jan. 23, 2025), pursuant to which the Deputy Attorney General issued the April 7, 2025 "Memorandum on Ending Regulation by Prosecution" ("Blanche Memo"). The Blanche Memo says that the Government should "no longer target virtual currency exchanges, mixing and tumbling services, and offline wallets *for the acts of their end users*[.]" Blanche Memo at 1 (emphasis added); *see also id.* at 2 ("[T]he Department will pursue the illicit financing of [criminal] enterprises by the individuals and enterprises themselves, including when it involves digital assets, but will not pursue actions *against the platforms that these enterprises utilize to conduct their illegal activities*.") (emphasis added). But that is precisely what the Government seeks to do here—imprison app developers for the alleged wrongdoing of app users under an unprecedented and novel theory that was contrary to the guidance of the governing regulators. This is why so many stakeholders have been closely watching this case.

Five organizations represented by able counsel have expressed an interest in submitting amicus briefs to provide the Court with helpful perspectives on technology, the cryptocurrency industry and environment, and the potential implications of this Court's ruling beyond this prosecution.

The Government has not objected to amicus curiae participation, and with good reason: The Government regularly appears as amicus in courts across the country and it is the Department of Justice's policy to freely consent to amicus briefs in cases where the Government is a party. *See* U.S. Attorneys' Manual § 2-2.125, *Procedure for Consenting to or Opposing the Filing of an Amicus Brief* ("The normal practice of the Department of Justice is to freely grant its consent to the filing of amicus briefs"; refusal to consent to amicus participation requires consultation and approval of the Solicitor General's office).

Below we provide an overview of the benefit of amicus briefs in cases presenting important questions and the identities of amici who have expressed an interest in submitting briefs for the Court's consideration.

## **Benefits of Amicus Curiae Briefs**

The federal appellate courts have long had an open door policy to amicus briefs for a number of reasons that apply equally to district court cases raising important legal questions like the present case.

Amicus briefs often provide helpful information on the broader context or implications of a case: "Even when a party is very well represented, an amicus may provide important assistance to the court." *Neonatology Assocs., P.A. v. Commissioner of Internal Rev.*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.). "Some amicus briefs collect background

# Arnold & Porter

May 29, 2025
Page 3

or factual references that merit judicial notice." *Id.* Some friends of the court "are entities with particular expertise not possessed by any party to the case." *Id.* "Others argue points deemed too far-reaching for emphasis by a party intent on winning a particular case." *Id.* "Still others explain the impact a potential holding might have on an industry or other group." *Id.*; *accord Weininger v. Castro*, 418 F. Supp. 2d 553, 555 (S.D.N.Y. 2006) (citing *Neonatology* favorably in granting leave to file amicus brief); U.S. Attorneys' Manual § 2-2.125, *Procedure for Consenting to or Opposing the Filing of an Amicus Brief* (citing *Neonatology* standard favorably).[2]

Indeed, justices of the U.S. Supreme Court cite amicus briefs in nearly half of their decisions, reflecting that these briefs are helpful in the decision-making process. *See* Anthony J. Franze & R. Reeves Anderson, *Amicus Curiae at the Supreme Court: Last Term and the Decade in Review*, Nat. L. J. (2020).

To be sure, district court dockets present different challenges than the appellate courts. And ultimately, of course, this Court has "broad discretion to permit or deny the appearance of amici curiae in a given case." *Weininger v. Castro*, 418 F. Supp. 2d 553, 555 (S.D.N.Y. 2006)(granting leave for amicus brief); *United States v. Ahmed*, 788 F. Supp. 196, 198 (S.D.N.Y.) (denying leave); *United States v. Yonkers Contracting Co.*, 697 F. Supp. 779, 784 (S.D.N.Y. 1988) (granting leave). But "[i]f an amicus brief that turns out to be unhelpful is filed, the [court], after studying the case, will often be able to make that determination without much trouble and can then simply disregard the amicus brief." *Neonatology*, 293 F.3d at 133. "On the other hand, if a good brief is rejected, the [court] will be deprived of a resource that might have been of assistance." *Id.*; *accord Lefebure v. D'Aquilla*, 15 F.4th 670, 676 (5th Cir. 2021) (granting opposed motion to file amicus brief (quoting *Neonatology*)).

A permissive approach to amicus briefs in cases such as this one also fosters judicial transparency. By contrast, "[a] restrictive policy with respect to granting leave to file may also create at least the perception of viewpoint discrimination" or may suggest "an unfortunate message about the openness of the court." *Neonatology*, 293 F.3d at 133.

Perhaps for these reasons, district courts have repeatedly adopted Justice Alito's approach, and freely accepted amicus briefs, even when—unlike here—the other side has opposed amicus participation. *E.g.*, *Kistler*, 2023 WL 1827734, at *1; *League of Women Voters of New Hampshire. v. Kramer*, 2024 WL 4604323, at * 2 (D.N.H. Oct. 29, 2024); *Bernard v. Cosby*, 2022 WL 3273877, at *2 (D.N.J. Aug. 11, 2022); *Stross v. Glass Homes*,

---

[2] Then-judge Alito was analyzing Federal Rule of Appellate Procedure 29. "In the absence of clear governing standards, district courts have looked to Rule 29 . . . for guidance." *Kistler v. Stanley Black & Decker, Inc.*, 2023 WL 1827734, at *1 (D. Conn. Jan. 25, 2023).

# Arnold & Porter

May 29, 2025
Page 4

*Inc.*, 2022 WL 21310031, at *2 (C.D. Cal. Apr. 4, 2022); *Andrinkos v. Pac. Maritime Ass'n*, 2021 WL 12323931, at *1 (C.D. Cal. June 30, 2021); *In re Weinstein Co. Holdings, LLC*, 2020 WL 1320821, at *1 n.3 (D. Del. Mar. 20, 2020); *United States v. Feng Tao*, 499 F. Supp. 3d 940, 972 (D. Kan. Nov. 2, 2020); *C.P. v. New Jersey Dep't of Educ.*, 2019 WL 6907490, at *3 (D.N.J. Dec. 19, 2019); *Earth Island Institute v. Nash*, 2019 WL 6790682, at *2 (E.D. Cal. Dec. 12, 2019); *Portland Pipe Line Corp. v. City of S. Portland*, 2017 WL 79948, at *6 (D. Me. Jan. 9, 2017); *see also Pratt v. Indian River Cent. Sch. Dist.*, 2010 WL 11681606, at *4 (N.D.N.Y. Dec. 6, 2010) (granting United States's motion to appear as amicus).

## Identities of Potential Amici

The following five organizations have indicated to Defendants an interest in participating as amicus curiae in support of Defendants' motions to dismiss. We understand they will make efforts to avoid duplication and join one another's briefs as warranted.

**The Blockchain Association** and **DeFi Education Fund** have expressed an interest in filing a joint amici brief. The Blockchain Association is a cryptocurrency membership association that promotes the potential of blockchain technology. DeFi Education Fund is a nonpartisan research and advocacy group whose mission is to explain the benefits of decentralized finance, help achieve regulatory clarity for decentralized finance technology, and contribute to the realization of the transformative potential of decentralized finance for everyone. Amici intend to offer unique perspective into how the federal government's interpretation of the governing law has wide-ranging and harmful implications for software development.

**Coin Center** and **the Bitcoin Policy Institute** have expressed an interest in filing a joint amici brief. Coin Center is a Washington, DC-based non-profit research and advocacy center focused on the public policy issues facing cryptocurrency and decentralized computing technologies such as Bitcoin. The Bitcoin Policy Institute is a nonpartisan, nonprofit organization researching the policy and societal implications of Bitcoin and emerging monetary networks. Its mission is to provide rigorous, evidence-based analysis to policymakers and the public, promoting informed decisions that foster innovation and protect individual rights in the evolving digital economy.

Both organizations bring deep expertise in how Bitcoin and peer-to-peer blockchain networks function, particularly in distinguishing between custodial intermediaries and non-custodial tools. Their brief will provide context and industry-specific insights that demonstrate why applying traditional money transmission laws to non-custodial software misinterprets both the intent of the Bank Secrecy Act and Section 1960, as well as the core nature of blockchain technology as peer-to-peer infrastructure. By clarifying these

# Arnold & Porter

May 29, 2025
Page 5

fundamental distinctions, these organizations hope to assist the Court in understanding the broader implications of its decision on technology development, freedom of expression, and user privacy—perspectives that are unlikely to be fully captured by the parties themselves.

**The Digital Chamber** is the world's largest digital asset and blockchain trade association. The Chamber represents more than 200 diverse members of the blockchain industry globally, including digital asset exchanges, leading banks and investment firms, startups, and other digital asset economy participants. An important aspect of the Chamber's mission is representing the interests of its members, including regularly filing briefs as amicus curiae in novel cases that implicate issues of importance to the blockchain community. Many of its members are money transmitters required to register with the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") as a money services business, while many other members, particularly those involved in the provision of non-custodial software products, are not. For more than a decade its members have relied upon FinCEN's guidance and administrative rulings and a commonsense interpretation of FinCEN regulations to determine whether they are required to register with FinCEN. The DOJ's interpretation of FinCEN's rules, as articulated in the indictment, seeks to upend FinCEN's long-established approach to digital assets in a manner that has created significant confusion and uncertainty for Chamber members. The Chamber has heard repeatedly from its members expressing deep concern over this case and believes this a critical issue for its membership.

# Arnold & Porter

May 29, 2025
Page 6

   In sum, "an amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend." *Neonatology*, 293 F.3d at 131. We hope the Court will give amici in this case the opportunity to do so.

               Respectfully submitted,

               */s/ Michael Kim Krouse*
               Michael Kim Krouse
               *Counsel for Defendant Keonne Rodriguez*

               */s/ Roger A. Burlingame*
               Roger A. Burlingame
               Matthew L. Mazur
               *Counsel for Defendant William Lonergan Hill*