UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA

-against-

KEONNE RODRIGUEZ and
WILLIAM LONERGAN HILL,

                    Defendants.

Case No.: 24-CR-82 (DLC)

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS INDICTMENT**

Roger A. Burlingame
Matthew L. Mazur
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
roger.burlingame@dechert.com
matthew.mazur@dechert.com

*Counsel for Defendant
William Lonergan Hill*

Michael Kim Krouse
William T. Sharon
Maya Kouassi
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
michael.krouse@arnoldporter.com

Anthony J. Franze (*pro hac vice*)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20004
(202) 942-6479
anthony.franze@arnoldporter.com

*Counsel for Defendant
Keonne Rodriguez*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................2

      A.     Samourai Is Not a "Money Transmitting" Business Under Section 1960 .............2

      B.     The Government's Newfound, Atextual Interpretation of "Money
            Transmitting Business" Deprives Defendants of Fair Notice ...............................7

      C.     The Conspiracy to Launder Money Count Should be Dismissed..........................8

CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auburn Hous. Auth. v. Martinez*,
  277 F.3d 138 (2d Cir. 2002) ................................................5

*Azar v. Allina Health Serv.*,
  587 U.S. 566 (2019) ...........................................................5

*Feliciano v. Dep't of Trans.*,
  145 S. Ct. 1284 (2025) .......................................................2

*Fischer v. United States*,
  603 U.S. 480 (2024) ...........................................................7

*Givelify LLC v. Department of Banking*,
  210 A.3d 393 (Pa. Commw. Ct. 2019) ...............................6

*United States v. Aleynikov*,
  676 F.3d 71 (2d Cir. 2012) .................................................7

*United States v. Banki*,
  685 F.3d 99 (2d Cir. 2012) .................................................5

*United States v. Bondars*,
  801 F. App'x. 872 (4th Cir. 2020) ...................................10

*United States v. E-Gold, Ltd.*,
  550 F. Supp. 2d 82 (D.D.C. 2008) .....................................4

*United States v. Ness*,
  565 F.3d 73 (2d Cir. 2009) .................................................9

*United States v. Orozco-Prada*,
  732 F.2d 1076 (2d Cir. 1984).............................................10

*United States v. Penn. Indus. Chem. Corp.*,
  411 U.S. 655 (1973) ...........................................................7

*United States v. Pilipis*,
  2025 WL 486604 (S.D. Ind. Feb. 13, 2025) ......................8

*United States v. Singh*,
  995 F.3d 1069 (9th Cir. 2021) ............................................6

*United States v. Superior Growers Supply, Inc.*,
    982 F.2d 173 (6th Cir. 1993) ................................................................. 9, 10

*United States v. Velastegui*,
    199 F.3d 590 (2d Cir. 1999) ...................................................................... 5

*United States v. Zambrano*,
    776 F.2d 1091 (2d Cir. 1985) ................................................................... 10

**Statutes**

18 U.S.C. § 1960(a) ....................................................................................... 2

18 U.S.C. § 1960(b)(1) ................................................................................... 7

18 U.S.C. § 1960(b)(2) ................................................................................... 2

31 U.S.C. § 5330(d)(1)(A) ............................................................................. 4

Pub. L. No. 103-325, 108 Stat. 2160, § 408 (1994) ...................................... 5

Pub. L. No. 107-56, 115 Stat. 272 (2001) ..................................................... 5

**Other Authorities**

Daniel Barabander et al., *Through the Looking Glass: Conceptualizing Control
    and Analyzing Criminal Liability for Unlicensed Money Transmitting
    Businesses Under Section 1960*, Int'l Acad. of Fin. Crim Litigators (2024) ........................... 6

DEFI Educ. Fund & Blockchain Ass'n Proposed Amicus Br.,
    https://tinyurl.com/samouraiamicus ........................................................ 3

*Transfer*, Merriam-Webster, https://www.merriam-
    webster.com/dictionary/transfer ............................................................. 2

W. Eskridge, Interpreting Law (2016) .......................................................... 2

## <u>INTRODUCTION</u>

The government does not dispute that FinCEN—the federal agency charged with determining who must be licensed as a "money transmitting business"—has repeatedly advised the public that software applications like Samourai Wallet are not "money transmitting businesses" that require a license. Dkt. 107 ("Defs. Mot.") 1-4, 12-14. Nor does the government dispute the reason FinCEN has taken this view: Anonymizing software like Samourai does not take custody of users' funds and thus does not "transfer" or "transmit" currency—the threshold statutory requirement to be a money transmitting business. *Id.* at 13-14.

Remarkably, the government argues that FinCEN's interpretation and guidance to the public on what constitutes a "money transmitting business" is "irrelevant" and "immaterial." Dkt. 118 ("Opp.") 15, 18, 19, 32 n.14. The government goes so far as to tell the Court that it "should not look to . . . FinCEN regulations or guidance to determine whether Samourai was a money transmitting business." *Id.* at 15. But just because the government does not like FinCEN's interpretation, it does not mean the Court should ignore it. And the reason the government gives to ignore FinCEN is absurd: that a "money transmitting business" means one thing when FinCEN decides if a business needs to be licensed and something else when the Department of Justice prosecutes that *same business* for failure to get a license. Regardless, the government's interpretation of "money transmitting business" under Section 1960 is contrary to the ordinary meaning of the statute's text and how everyone understood the law. At the very least, the government's sudden change in position deprived Defendants of fair notice.

As for the money laundering count, the superseding indictment does not cure the defects in the government's theory. The allegations in that count are precisely the type the Supreme Court and courts of appeals have held warrant dismissal of an indictment. The Court should dismiss.

## ARGUMENT

### A.     Samourai Is Not a "Money Transmitting" Business Under Section 1960

Section 1960 makes it a crime to "knowingly conduct[], control[], manage[], supervise[], direct[], or own[] all or part of an unlicensed money transmitting business." 18 U.S.C. § 1960(a). To violate the statute, a defendant must be an "unlicensed money transmitting business." To engage in "money transmitting" under 18 U.S.C. § 1960(b)(2), a defendant must have been "transferring funds on behalf of the public." To transfer funds "on behalf of" a person, a defendant must first take custody of those funds. That should be the end of the Section 1960 count here because the government concedes that Samourai never took custody of any user's funds. Opp. 20 ("Samourai users kept custody of the private keys . . . ."); *id.* at 26 (similar). Nevertheless, the government urges the Court to adopt a novel theory that a defendant can transfer funds he never holds. That does not hold water.

The government's interpretation contravenes the ordinary meaning of the verb "transfer." The "prime directive in statutory interpretation is to apply the meaning that a reasonable reader would derive from the text of the law," so that "the ordinary meaning (or the 'everyday meaning' or the 'commonsense' reading) of the relevant statutory text is the anchor for statutory interpretation." W. Eskridge, Interpreting Law 33, 34-35 (2016) (footnote omitted). "[T]hose whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden messages." *Feliciano v. Dep't of Trans.*, 145 S. Ct. 1284, 1291 (2025). The key inquiry: "Just ask yourself how an ordinary American might approach the law's terms." *Id.*

The ordinary meaning of the word "transfer" connotes sending or conveying funds from one person to another. *See Transfer*, Merriam-Webster, https://www.merriam-webster.com/dictionary/transfer ("to convey from one person, place, or situation to another" or "to cause to pass from one to another"). Someone does not "transfer" an object merely by creating a

tool that other people use to move that object. As leading cryptocurrency industry participants supporting the dismissal of this case have explained: "[I]f someone drives his money from one place to another using a Ford Bronco, *Ford* does not 'transfer,' 'transmit,' or 'accept' the money. Nor does Ford make the transfer on behalf of the driver. Likewise, the paper company that prints security envelopes so that others may safely mail checks does not 'transfer,' 'transmit,' or 'accept' the checks. Nor does the paper company make the transfer on behalf of the sender." DEFI Educ. Fund & Blockchain Ass'n Proposed Amicus Br., https://tinyurl.com/samouraiamicus. Similarly, under the common-sense understanding of Section 1960(b)(2), a defendant cannot "transfer" funds "on behalf of" another person if he never *has* the funds. The same is true of Samourai; no "ordinary American" would say "transferring funds" encompasses developing software residing on a user's mobile phone and a "centralized server" that generates cryptocurrency wallet addresses,[1] which *users* can use to anonymize *their* own cryptocurrency transfers. Opp. 6-7, 20-24, 28.

But the Court need not take Defendants' word for it. The federal agency charged with deciding who needs to be licensed as a money transmitting business agrees. FinCEN has long advised the industry that a person or entity needs custody of funds to be a "money transmitting business" required to obtain a license. Defs. Mot. 12-14. And the government does not dispute that FinCEN told industry participants like Defendants that "anonymizing software" like Samourai Wallet is not a money transmitting business precisely *because* such software does not take custody of funds. *Id.* Indeed, in discussions with DOJ over this very prosecution, FinCEN's Chief of the Virtual Assets and Emerging Technology Section in the Enforcement and Compliance Division informed the prosecutors that FinCEN guidance had "generally focused on custody of

---

[1] While this brief treats the government's allegations as true, the "centralized server" does not in fact "generate" wallet addresses. Wallet addresses are generated on a user's mobile phone.

cryptocurrency in the question of determining whether an entity is acting as an MSB [money services business]." Dkt. 86, Ex. A. Because Samourai Wallet "does not take 'custody' of the cryptocurrency . . . that would strongly suggest that Samourai is NOT acting as an MSB." *Id.*

The government does not dispute any of this. Instead, it urges the Court to ignore FinCEN's public guidance as "irrelevant" and "immaterial." Opp. 15, 18, 19, 32 n.14. It is anything but.

*First*, the government urges the Court to ignore what FinCEN told the public because, it says, "money transmitting business" has a different meaning in Section 1960 than it does in Section 5330. *Id.* at 15-16. The government relies on *United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82 (D.D.C. 2008), to argue that "Section 1960 does not borrow the definition of 'money transmitting business' from Section 5330." Opp. 16-17. But the government omits the rest of what the *E-Gold* court said: "[T]here is virtually no substantive difference, nor did Congress intend there to be a substantive difference, between the terms 'money transmitting' in Section 1960 and 'money transmitting business' in Section 5330. The actual definition of a 'money transmitting business' under Section 5330 tracks the language of Section 1960 so closely (with certain minor exceptions that are irrelevant for our purposes, *e.g.*, a 'depository institution') as to be virtually indistinguishable." 550 F. Supp. 2d at 92 n.10. As the government notes, Section 1960 specifies that "'money transmitting' includes transferring of funds on behalf of the public by any and all means," while Section 5330 elaborates on that, identifying specific enterprises that are "money transmitting businesses." 31 U.S.C. § 5330(d)(1)(A). But the meaning of "money transmitting business" is materially the same in both provisions; after all, both require "transmitting," which, in turn, requires custody.

*Second*, the legislative history confirms the relevance of FinCEN's interpretation of "money transmitting business." In 1994, Congress amended Section 1960 (to criminalize the

4

failure to obtain a license) in the same legislation where it amended Section 5330. In fact, Congress did so in the exact same section of the bill—titled "Registration of money transmitting businesses to promote effective law enforcement." *See* Pub. L. No. 103-325, 108 Stat. 2160, Section 408 (1994). Once again, in the 2001 Patriot Act, the two provisions were amended in the same bill, and FinCEN was also officially made part of Treasury. *See* Pub. L. No. 107-56, 115 Stat. 272 (2001). "[S]uch proximity in time of enactment is forceful evidence that Congress intended the two statutes to stand together." *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 145 (2d Cir. 2002) ("[W]hen two statutes are enacted on the same day, the presumption that Congress intends both statutes to stand together is even stronger and the approach is to make every effort to reconcile the statutes so as to give maximum effect to both").

*Third*, the government's interpretation would lead to absurd results: A business could be a "money transmitting business" when charged under subsection (b)(2)(C) of Section 1960, but the *identical business* would *not* be a "money transmitting business" when charged under (b)(2)(B) of Section 1960 (because (b)(2)(B) cross-references Section 5330). Courts ordinarily do not "assume that Congress silently attaches different meanings to the same term in the same or related statutes." *E.g.*, *Azar v. Allina Health Serv.*, 587 U.S. 566, 574 (2019). And there is no reason to do so here.

The government asserts that "defendants do not cite any case or legal authority that has ever held that custody of the funds is required" under Section 1960. Opp. 26. But the Second Circuit concluded that "a money transmitting business *receives money from a customer* and then, for a fee paid by the customer, *transmits* that money to a recipient in a place that the customer designates." *United States v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999) (emphases added). The government brushes that aside as "dicta," Opp. 25, but other courts have relied on it, *see, e.g.*, *United States v. Banki*, 685 F.3d 99, 114 (2d Cir. 2012) (favorably citing *Velastegui*'s definition);

*United States v. Singh*, 995 F.3d 1069, 1077 (9th Cir. 2021) (same).

Likewise, the government glosses over one of the few decisions that considered—and rejected—the government's strained interpretation. Opp. 26 n.8. In *Givelify LLC v. Department of Banking*, the state argued that, under the state-law counterpart to Section 1960, a defendant could "transmit" money it never had in its custody. Relying on *Velastegui*, the court held that the state's reading flouted the ordinary meaning of the statute:

> Based upon its most natural reading, former Section 2 of the MTA requires a license when an individual or organization has been "transmitting money." In this regard, the key term in ascertaining the defining characteristic of the conduct that is proscribed by the statute is "transmitting." Reduced from its gerund form, the verb "transmit" is defined by Black's Law Dictionary, in relevant part, as, "To send or transfer (a thing) from one person or place to another." Black's Law Dictionary 1638 (9th ed. 2009). . . . In *United States v. Velastegui*, 199 F.3d 590 (2d Cir. 1999), the [court] explained that "[a] money transmitting business receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates[.]" *Id.* at 592. Applying this understanding of what action is necessary for a person or entity to be "transmitting money" to the hearing officer's findings of fact and reasoning, we conclude that Petitioner was not engaged in the business of transmitting money.

210 A.3d 393, 401-02 (Pa. Commw. Ct. 2019). Not a single case among the dozens of reported Section 1960 decisions involved a business that lacked custody of the funds. *See* Daniel Barabander et al., *Through the Looking Glass: Conceptualizing Control and Analyzing Criminal Liability for Unlicensed Money Transmitting Businesses Under Section 1960*, Int'l Acad. of Fin. Crim Litigators at 16 n.47 (2024).

Finally, the superseding indictment reveals another problem with the Section 1960(b)(1)(C) charge: That provision applies only to money transmitting businesses that are already licensed and registered, which Samourai was not. As noted, the statute prohibits operating an "unlicensed money transmitting business," which "means a money transmitting business" that (A) "is operated without [a] license [under state law]," (B) "fails to comply with the money transmitting business registration requirements [of Section 5330]," or (C) "*otherwise* involves the transportation or

transmission of funds that are known to the defendant to have been derived from a criminal offense." 18 U.S.C. § 1960(b)(1) (emphasis added). The word "otherwise" in a statute means the following provision "cover[s] some set of matters not specifically contemplated" by the preceding provisions. *Fischer v. United States*, 603 U.S. 480, 486 (2024). Because Section 1960(b)(1)(B) covers businesses that fail to register, Section 1960(b)(1)(C) covers businesses that are registered but *otherwise* transmit illicit funds. In other words, Section 1960(b)(1)(C) provides that a "money transmitting business" that has a license can nevertheless be treated as "unlicensed" if it "otherwise" transmits criminal funds. If Samourai were a "money transmitting business," it would, if anything, be "unlicensed" for failing to register; it would not be "otherwise" treated as "unlicensed" under Section 1960(b)(1)(C).

### B.    The Government's Newfound, Atextual Interpretation of "Money Transmitting Business" Deprives Defendants of Fair Notice

The government urges the Court to ignore the rule of lenity and novel-construction canons because "the terms of the statute are plain and straightforward." Opp. 30. For the reasons discussed, however, the government's vision of "money transmitting business" plainly contradicts the statutory language. The government's interpretation certainly is not "straightforward," as evidenced by FinCEN rejecting that very interpretation.

At the very least, FinCEN's contrary interpretation forecloses the notion that Defendants had fair notice that they were (according to the government) engaged in criminal behavior. Where the relevant federal regulator has consistently interpreted a statute to mean one thing, "there can be no doubt that traditional notions of fairness inherent in our system of criminal justice prevent the Government from proceeding with [a] prosecution" based on a different interpretation. *United States v. Penn. Indus. Chem. Corp.*, 411 U.S. 655, 674 (1973). And, given a choice between two readings of a criminal statute, a court should adopt the one more lenient to the accused. *United*

*States v. Aleynikov*, 676 F.3d 71, 82 (2d Cir. 2012). Indeed, a court recently dismissed an indictment where FinCEN's guidance was unclear (at the time of the alleged conduct) about whether a cryptocurrency website was a money transmitting business subject to licensing requirements. *United States v. Pilipis*, 2025 WL 486604 (S.D. Ind. Feb. 13, 2025). This case is the flipside: FinCEN *was* clear, while Samourai was operating, that it was *not* a money transmitting business.

The government alternatively argues that Defendants had fair notice of DOJ's newly invented interpretation of "money transmitting business" because "defendants' alleged conduct is similar to other cryptocurrency businesses in which courts have rejected similar challenges to unlicensed money transmitting charges." Opp. 31. But FinCEN explicitly distinguished the very types of businesses prosecuted in those actions (which had custody over users' funds), from anonymizing software like Samourai Wallet (which never had custody over users' funds). *See* Defs. Mot. 13-14 (discussing FinCEN 2019 Guidance ).

Finally, the government argues that novel interpretations are "inevitable" in cases involving new technologies and that "[s]ome case has to be first." Opp. 31. But this prosecution was not written on a blank slate. Again, FinCEN repeatedly advised that software like Samourai is not a "money transmitting business" that requires a license. Precisely because the question involved evolving technology, industry participants relied heavily on FinCEN's guidance. Prosecuting acts taken based on that reliance violates every notion of fairness and due process.

## C.    The Conspiracy to Launder Money Count Should be Dismissed

Neither the original indictment nor the superseding indictment allege the type of conduct that could sustain the conspiracy to launder money count.

The government initially alleged that Defendants entered into a conspiracy to use a "financial institution"—*i.e.*, Samourai Wallet—to violate Section 1956. After Defendants argued that a "financial institution" is defined as a "money transmitting business," Defs. Mot. 19-20, the

government abandoned this theory, asserting that the issue "is now moot because the S3 Superseding Indictment does not allege that Samourai was a 'financial institution.'" Opp. 33 n.15. Instead, the government alleges that "Samourai engaged in transactions affecting interstate or foreign commerce 'involving the movement of funds by wire or other means.'" *Id.* Why the change? Because FinCEN makes clear that Samourai was not "a money transmitting business" and thus not a "financial institution." *United States v. Ness*, 565 F.3d 73, 79 (2d Cir. 2009) (rejecting theory that defendant was a money transmitter and holding, in turn, that defendant was not a "financial institution"). In any case, just as Samourai Wallet never "transferred" funds (which were not within its custody), it did not "move" funds it never controlled. As the Government concedes, Samourai users moved their own funds. Opp. 6-7. Just as they did not conspire to violate Section 1960, Defendants did not conspire with each other to violate the money laundering laws.

As for allegedly conspiring with Samourai's users, the superseding indictment adds "descriptions of additional evidence" to try to overcome settled law that a seller of a product does not join a conspiracy simply because it knows or even encourages customers to misuse the products. *Id.* at 3 n.2. But even with these out-of-context snippets, the government never squares its claims with *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173 (6th Cir. 1993), which applied Supreme Court precedent and held that similar allegations fail to assert a cognizable conspiracy. There, the government charged a garden supply store, its owners, and its employees with conspiracy to aid the illegal manufacture of marijuana. The government alleged the defendants sold gardening equipment and supplies knowing purchasers would use the materials to cultivate the drug. *Id.* at 175. The defendants "advertise[d] their products in 'High Times' magazine and other marijuana-related publications," "[sold] or [gave] publications concerning the growing of marijuana and other marijuana-related publications to many of their customers," and

"provide[d] information and advice on the growing of marijuana to various customers." *Id.* The Sixth Circuit nevertheless affirmed dismissal of the indictment.

Here, the government contends that Defendants made an online post that "advertised Samourai as a money laundering service," Opp. 9; provided information and advice on message boards to users, *id.*; and solicited users through social media posts, *id.* at 39-40. This conduct is materially indistinguishable from the conduct in *Superior Growers*.

And it is vastly unlike the conduct at issue in the cases the government cites, where defendants were directly involved in criminal schemes and "made [criminal] venture[s] their own." In *United States v. Zambrano* (cited at Opp. 40-41), for instance, the government had to "do more than simply establish that [the defendant] printed . . . unembossed [credit] cards" criminals then used to make counterfeit cards, even if the defendant "knew the cards might be used illegally." 776 F.2d 1091, 1094 (2d Cir. 1985). Rather, to establish a conspiracy, the defendant had to "promote [the criminal] venture himself" and "make it his own," which he did by surreptitiously meeting with co-conspirators when supplying the unembossed cards, and by keeping "the prototypes for nearly all of the counterfeit cards." *Id.* at 1094, 1096. The government's other cases likewise involved sellers who made the conspiracy "their own," and did not just passively advertise or know about criminal uses of their products. *United States v. Bondars*, 801 F. App'x. 872, 875-78 (4th Cir. 2020) (defendants "collaborated on a number of hacking schemes" and "entered into customer agreements with prolific hackers"); *United States v. Orozco-Prada*, 732 F.2d 1076, 1082 (2d Cir. 1984) (defendant made "several trips to Miami to pick up suitcases of cash" and hired others retrieve unlawful proceeds). The government's allegations do not come close to showing that Defendants made Samourai users' conspiracies their own.

## **CONCLUSION**

For the reasons above, the Court should dismiss the indictment.

Dated: July 10, 2025

Respectfully submitted,

*/s/ Roger A. Burlingame*
Roger A. Burlingame
Matthew L. Mazur
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
roger.burlingame@dechert.com
matthew.mazur@dechert.com

*Counsel for Defendant*
*William Lonergan Hill*

*/s/ Michael Kim Krouse*
Michael Kim Krouse
William T. Sharon
Maya Kouassi
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
michael.krouse@arnoldporter.com

Anthony J. Franze (*pro hac vice*)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20004
(202) 943-6479
anthony.franze@arnoldporter.com

*Counsel for Defendant*
*Keonne Rodriguez*